**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

11012 HOLDINGS, INC. d/b/a GUY
HEPNER,

                                   *Plaintiff*,

         **-** against **-**

HARTFORD FIRE INSURANCE
COMPANY and SENTINEL INSURANCE
COMPANY, LTD.

                                   *Defendants*.

Case No.

**COMPLAINT**

 **JURY TRIAL DEMANDED**

### INTRODUCTION

1.   Plaintiff 11012 Holdings, Inc. d/b/a Guy Hepner ("Plaintiff") is the owner and operator of Guy Hepner, a fine arts gallery and dealer located at 520 West 20th Street, New York, New York.

2.   To protect the gallery and the income from the operation of same, Hepner purchased a business property insurance policy, policy number 13SBATQ2841SB (the "Policy") from defendant Sentinel Insurance Company, Ltd. ("Sentinel").

3.   On information and belief, Sentinel is a subsidiary of defendant Hartford Fire Insurance Company ("Hartford"), and under the Policy, Hartford is responsible for receiving and managing claims and loss notices, responding to questions about insurance and coverage, and receiving process served on Sentinel's designated agent, among other things.

4.   The Policy is a bilateral contract: Plaintiff agreed to pay premiums to Defendants in exchange for Defendants' promise to cover certain losses.

5.   Among other types of coverage, the Policy protects Plaintiff against a loss of business due to a suspension of the gallery's operations, which is typically referred to as Business Interruption coverage.

- 1 -

6.   The Policy also provides for "Extra Expense" coverage, under which Defendants promised to pay expenses incurred to minimize the suspension of business.

7.   Additionally, the Policy provides for "Civil Authority" coverage, under which Defendants promised to pay for loss of business income caused by the action of a civil authority prohibiting access to the gallery.

8.   Plaintiff complied with its obligations under the Policy by paying the required premiums.

9.   Beginning in March 2020, Plaintiff was forced to suspend business operations at the gallery as a result of the COVID-19 pandemic. Civil authority orders issued by the Governor of the State of New York in response to the outbreak of COVID-19 in the New York metropolitan area prohibited complete access to and occupancy of the gallery as well as business transactions from the same.

10.   Subsequent orders re-affirmed the suspension of Plaintiff's business and suspension of access to the gallery.  As of the date of this Complaint, the suspension of Plaintiff's operations is ongoing.

11.   The various suspension orders have caused Plaintiff to suffer significant losses and incur significant expenses.

12.   Under the Policy, Defendants promised to cover these losses and expenses, and are obligated to pay them.

13.   In blatant breach of their contractual obligations, however, Defendants have refused to pay Plaintiff's losses and expenses.

**PARTIES**

14.  Plaintiff is the owner and operator of Guy Hepner, a fine arts gallery and dealer located at 520 West 20th Street, New York, New York.

15.  Defendant Hartford is a corporation organized under the laws of Delaware with its principal place of business in Hartford, Connecticut. Hartford owns subsidiaries, directly and indirectly, that issue, among other things, property insurance.

16.  Defendant Sentinel is a corporation organized under the laws of Connecticut with its principal place of business in Hartford, Connecticut. Sentinel is a subsidiary of Hartford and is duly qualified and licensed to issue insurance in the State of New York and other states. Defendants Hartford Financial and Sentinel are collectively referred to herein as Hartford or Defendants.

17.  At all times material, Defendants engaged in substantial and not isolated activity on a continuous and systematic basis in the state of New York by issuing and selling insurance policies in New York and by contracting to insure property in New York.

**JURISDICTION AND VENUE**

18.  This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

19.  Venue is proper in the U.S. District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to the claims occurred in the Southern District of New York, a substantial part of the property that is subject to the action is situated in this district and Defendants regularly conduct business in this district.

**FACTUAL ALLEGATIONS**

20.  In April 2019, Plaintiff obtained the Policy, a Spectrum® Business Owner's Policy

issued by insurer Sentinel, with Policy number 13SBATQ2841SB. The insured property under the Policy is 520 West 20th Street, New York, New York, the location of Plaintiff's gallery. The Policy period ran from April 1, 2019 through April 1, 2020.[1]

21.   The Policy is an all-risk policy, meaning that all risks of loss are covered unless they are specifically excluded or limited in the Policy.

22.   Among the coverages provided by the Policy is business interruption insurance, which indemnifies Plaintiff for lost income and profits in the event the business was shut down.

23.   Specifically, Plaintiffs' Special Property Coverage Form, Form SS 00 07 05, under the Section "Additional Coverages," provides coverage for loss of business income as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss. "scheduled premises", caused by or resulting from a Covered Cause of Loss.

Policy, Special Property Coverage Form § A.5.o(1).

24.   The Policy defines "Business Income" as:

    (a)   Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and

    (b)   Continuing normal operating expenses incurred, including payroll.

Policy, Special Property Coverage Form § A.5.o(4).

25.   The Policy defines "suspension" as:

    (a)   The partial slowdown or complete cessation of your business activities; or

    (b)   That part of all of the "scheduled premises" is rendered untenantable as a

---

[1] An effectively identical Spectrum® Business Owner's Policy, policy number 13SBATQ2841SB for policy period April 1, 2020 through April 1, 2021 (the "2020-2021 Policy"), was issued by Defendants to Plaintiff on or about April 1, 2020.

result of a Covered Cause of Loss if coverage for Business Income applies to the policy.

Policy, Special Property Coverage Form § A.5.o(5).

26.  In addition, the Policy provides "Extra Expense" coverage as follows:

We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

(3) Extra Expense means expense incurred:

(a) To avoid or minimize the suspension of business and to continue "operations":
> (i) At the "scheduled premises"; or
> (ii) At replacement premises or at temporary locations, including:
>> (aa) Relocation expenses; and
>> (bb) Cost to equip and operate the replacement or temporary location, other than those costs necessary to repair or to replace damaged stock and equipment.

(b) To minimize the suspension of business if you cannot continue "operations".

(c)       (i) To repair or replace any property; or

(ii) To research, replace or restore the lost information on damaged "valuable papers and records";

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage o., Business Income.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or physical damage. This Additional Coverage is not subject to the Limits of Insurance.

(4) With respect to the coverage provided in this Additional Coverage, suspension means:

(a) The partial slowdown or complete cessation of your business activities; or

(b) That part or all of the "scheduled premises" is rendered untentantable [*sic*] as a result of a Covered Cause of Loss if coverage for Extra Expense applies to the policy.

- 5 -

(5) Limitation

This Extra Expense Coverage does not apply to:

> (a) Any deficiencies in insuring building or business personal property; or

> (b) Any expense related to any recall of products you manufacture, handle or distribute.

Policy, Special Property Coverage Form § A.5.p

27.  In addition, the Policy provides "Civil Authority" coverage, as follows:

> **q. Civil Authority**

> (1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".
> (2) The coverage for Business Income will begin 72 hours after the order of a civil authority and coverage will end at the earlier of:
>> (a) When access is permitted to your "scheduled premises"; or
>> (b) 30 consecutive days after the order of the civil authority.

Policy, Special Property Coverage Form § A.5.q.

28.  "Covered Causes of Loss" is defined under the Policy as:

> RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
> Excluded in Section B., EXCLUSIONS; or
> Limited in Paragraph A.4. Limitations; that follow.

Policy, Special Property Coverage Form § A.3.

29.  Plaintiff has suffered a direct physical loss of and damage to its property as a result of COVID-19 and the orders of civil authorities, which have rendered Plaintiff unable to use its property for its intended purpose, has denied Plaintiff access to its property, has caused a suspension in Plaintiff's business operations on the premises and the function of Plaintiff's property has been eliminated or destroyed.

30.  The interruption of Plaintiff's business was not caused by any exclusion set forth in

the Policy.

31. Plaintiff's Policy does not include any exclusion for losses caused by virus, but includes the following exclusion relating to pollutants:

> 2. We will not pay for physical loss or physical damage caused by or resulting from:
>
>> **i. Pollution:** We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants and contaminants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if physical loss or physical damage by the "specified causes of loss" results, we will pay for the resulting physical loss or physical damage caused by the "specified cause of loss."

Policy, Special Property Coverage Form § B.2.i.

32. The Policy defines "Pollutants and Contaminants" as:

> . . . any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste, or any other material which causes or threatens to cause physical loss, physical damage, impurity to property, unwholesomeness, undesirability, loss of marketability, loss of use of property, or which threatens human health or welfare. Waste includes materials to be recycled, reconditioned or reclaimed.

Policy, Special Property Coverage Form § G.15.

33. The Pollution exclusion is not applicable because COVID-19 is not a "Pollutant or Contaminant," and Plaintiff's losses were not caused directly or indirectly by any of the actions set forth in this exclusion. Rather, the proximate cause of Plaintiff's losses were the precautionary measures taken by the New York civil authorities to prevent the spread of COVID-19.

34. Specifically, on March 7, 2020, New York Governor Andrew Cuomo declared a state disaster emergency for the entire state, and on March 12, 2020 Governor Cuomo signed Executive Order 202.1, which, among other things, ordered that any large gathering or event for which attendance is anticipated to be in excess of five hundred people be cancelled or postponed

for a minimum of thirty days. Executive Order 202.1 also required that any place of business or public accommodation, and any gathering or event for which attendance is anticipated to be fewer than five hundred people, operate at no greater than 50% occupancy, and no greater than 50% of seating capacity, for thirty days effective on Friday, March 13, 2020.[2]

35.     On March 16, 2020, Governor Cuomo signed Executive Order 202.3, amending Executive Order 202.1 to require that, until further notice, any large gathering or event at any location in New York State be cancelled or postponed if more than fifty persons are expected in attendance.[3]

36.     On March 18, 2020, Governor Cuomo signed Executive Order 202.6, which required, among other things, that any non-essential business reduce its in-person workforce at any work locations by 50% no later than March 20, 2020 at 8 p.m.;[4] on March 19, 2020, Governor Cuomo signed Executive Order 202.7, which, among other things, amended Executive Order 202.6 to require that any non-essential business reduce its in-person workforce at any work locations by 75% no later than March 21, 2020 at 8 p.m.;[5] and on March 20, 2020, Governor Cuomo signed Executive Order No. 202.8, which ordered, among other things, that effective at 8 p.m. on Sunday, March 22, 2020, all non-essential businesses statewide would be closed.[6]

---

[2] https://www.governor.ny.gov/news/no-2021-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[3] https://www.governor.ny.gov/news/no-2023-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[4] https://www.governor.ny.gov/news/no-2026-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[5] https://www.governor.ny.gov/news/no-2027-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[6] https://www.governor.ny.gov/news/no-2028-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

37.     These civil authority orders forced Plaintiff to suspend business operations as a result of COVID-19, and this suspension, which is ongoing, has cause Plaintiff to suffer significant losses and incur significant expenses.

38.     Plaintiff provided notice of its losses to Defendants consistent with the terms and procedures of the Policy.

39.     Notwithstanding said notice, by letter dated April 3, 2020, Hartford denied Plaintiff's claim for Business Interruption losses under the Policy on the grounds that the COVID-19 did not cause property damage at your place of business or in the immediate area.

### CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT

40.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

41.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

42.     Plaintiff's Policy is an insurance contract pursuant to which Defendants were paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy.

43.     As set forth in the Policy, Defendants promised to pay for losses of business income sustained as a result of perils not excluded in the Policy.

44.     In Plaintiff's Policy, Defendants agreed to pay for Plaintiff's actual loss of Business Income sustained due to the necessary suspension of its operations during the period of restoration.

45.     Plaintiff has suffered a direct physical loss of and damage to their property as a result of COVID-19 and the order of civil authorities, which has resulted in the suspension of their business operations causing Plaintiff to suffer losses of Business Income.

46.     These suspensions and losses triggered Business Income coverage under the Policy.

47.     In addition, Plaintiff's Policy obligated Defendants to pay for losses of business income sustained and extra expenses incurred when, among other things, a Covered Cause of Loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

48.     Plaintiff has suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy.

49.     These losses satisfied all requirements to trigger Civil Authority coverage under Plaintiff's Policy.

50.     In addition, Plaintiff's Policy obligated Defendants to pay for Extra Expenses incurred by Plaintiff during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

51.     Plaintiff has suffered a direct physical loss of and damage to its property as a result of COVID-19 and the orders of civil authorities, which has resulted in a suspension of their business operations. As a result, Plaintiff has incurred Extra Expenses.

52.      These expenses triggered Extra Expense coverage under Plaintiff's Policy and the policies of other Class members.

53.     Plaintiff has complied with all applicable provisions of its Policy, including payment of premiums and providing notice to Defendants.

54.     A dispute between the parties has arisen in that Plaintiff's position is that Defendant must cover Plaintiff's losses due to the COVID-19 pandemic (resulting in the complete shut down of Plaintiff's business) and since Defendants, without justification, dispute that the Policy provides coverage for the losses sustained by Plaintiff.

55.     Plaintiff therefore seeks a Declaratory Judgment that its Policy provides coverage for the loss of business incomes sustained by Plaintiff.

56.     An actual case or controversy exists regarding Plaintiff's rights and Defendants' obligations to reimburse Plaintiff for the full amount of these losses. Thus, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that Policy provides coverage for Plaintiff's losses as set forth herein.

## COUNT II: BREACH OF CONTRACT

57.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

58.     Plaintiff's Policy is an insurance contract pursuant to which Defendants were paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy

59.     As set forth in the Policy, Defendants promised to pay for losses of business income sustained as a result of perils not excluded in the Policy.

60.     Specifically, Defendants promised to pay for losses of business income sustained as a result of a suspension of business operations during the period of restoration.

61.     Plaintiff has suffered a direct physical loss of and damage to its property as a result of COVID-19 and the order of civil authorities, which has resulted in the suspension of its business operations causing Plaintiff to suffer losses of Business Income.

62.     These suspensions and losses triggered Business Income coverage under the Policy.

63.     In addition, Plaintiff's Policy obligated Defendants to pay for losses of business income sustained and extra expenses incurred when, among other things, a Covered Cause of Loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

64.     Plaintiff has suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy.

65.     These losses satisfied all requirements to trigger Civil Authority coverage under Plaintiff's Policy.

66.     In addition, Plaintiff's Policy obligated Defendants to pay for Extra Expenses incurred by Plaintiff during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

67.     Plaintiff has suffered a direct physical loss of and damage to it property as a result of COVID-19 and the orders of civil authorities, which has resulted in a suspension of their business operations. As a result, Plaintiff has incurred Extra Expenses.

68.      These expenses triggered Extra Expense coverage under Plaintiff's Policy and the policies of other Class members.

69.     Plaintiff has complied with all applicable provisions of its Policy, including payment of premiums and providing notice to Defendants.

70.     Defendants, without justification, dispute that the Policy provides coverage for the losses sustained by Plaintiff.

WHEREFORE, Plaintiff seeks compensatory damages resulting from Defendants' breaches of the Policy and seeks all other and further relief deemed appropriate by this Court, including attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, as follows:

A.  Entering a Declaratory Judgment on Count I of the Complaint as follows:

    i.   Business Income, Civil Authority and Extra Expense losses and expenses incurred and sustained as a result of COVID-19 and related civil authority actions are insured and covered losses and expenses under Plaintiff's Policy;

    ii.  Defendants are obligated to pay for the full amount of the Business Income, Civil Authority and Extra Expense losses and expenses sustained and incurred, and to be sustained and incurred, as a result of COVID-19 and related civil authority actions.

B.  Entering Judgment on Count II of the Complaint for Breach of Contract, and awarding damages for said breach in an amount to be determined at trial;

C.  Ordering that Defendants pay both pre- and post-judgment interest on any amounts awarded;

D.  Awarding Plaintiff its costs and attorneys' fees; and

E.  Granting such other and further relief as this Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury as to all issues so triable.

Dated: New York, New York
June 11, 2020

THE CASAS LAW FIRM, P.C.

/s/ John V. Golaszewski
John V. Golaszewski
Joseph N. Casas (*pro hac vice forthcoming*)
Dennis Postiglione (*pro hac vice forthcoming*)
1740 Broadway, 15th Floor
New York, New York 10019
T: 646-872-3178
*Attorneys for Plaintiff*