Charles Michael
212 378 7604
cmichael@steptoe.com



1114 Avenue of the Americas
New York, NY 10036
212 506 3900 main
www.steptoe.com

August 3, 2020

**By ECF**

Hon. Lorna G. Schofield
United States District Court
500 Pearl St.
New York, New York 10007

Re:   *11012 Holdings, Inc. d/b/a Guy Hepner v. Hartford Fire Ins. Co. et al.,*
      **20 Civ. 4471 (S.D.N.Y.) — Pre-Motion Letter for Motion to Dismiss**

Dear Judge Schofield:

On behalf of the defendants in the above captioned matter, we respectfully submit this pre-motion letter in anticipation of moving to dismiss. The plaintiff ("Guy Hepner") is an art gallery seeking business interruption insurance coverage under a policy issued by defendant Sentinel Insurance Company, Ltd. ("Sentinel") because of the COVID-19 pandemic. But the policy requires property damage, and coverage is not triggered on the facts alleged. Sentinel recognizes that the COVID-19 pandemic has impacted businesses in unprecedented ways, but that cannot vitiate the terms of the insurance contract to create coverage where none exists.

The motion would be based on three primary grounds.

First, Guy Hepner has not alleged (and cannot allege) facts falling within the Business Income or Extra Expense coverages sought. Those are triggered only where there is "direct physical loss of or physical damage to" property at Guy Hepner's premises that causes a suspension in operations. Guy Hepner concededly closed not because of any property damage at the premises but because of an external factor: government orders mandating that non-essential businesses reduce their in-person workforces in order to limit the potential spread of COVID-19. New York law is clear that external factors like this do not amount to direct property loss at the insured premises.

Second, Guy Hepner has likewise not alleged facts falling within the Civil Authority provision. That provision insures against business losses when "access to" an insured premises is "specifically prohibited by order of a civil authority as the direct result" of property losses "in the immediate area." But the workforce reduction orders were not issued because of property damage in the "immediate area" of Guy Hepner. Rather, they were issued to keep people apart to slow the spread of the virus

Finally, Guy Hepner has wrongfully sued an affiliate of Sentinel, Hartford Fire Insurance Company ("Hartford Fire"), which did not issue the insurance policy at issue.

Hon. Lorna G. Schofield
August 3, 2020
Page 2

**Steptoe**

### I.   Guy Hepner Does Not Allege Any Direct Physical Loss

Two of the three types of coverage sought here (Business Income and Extra Expense) are triggered only when operations are suspended "due to direct physical loss of or physical damage to property" at Guy Hepner's premises. (ECF 1 ("Compl.") ¶¶ 23, 26.) But Guy Hepner does not allege that any property was damaged by the virus or anything else. Instead, Guy Hepner admits the reasons it "was forced to suspend business operations" were "[c]ivil authority orders issued by the Governor of the State of New York in response to the outbreak of COVID-19." (*Id*. ¶ 9.) These orders have nothing to do with property damage, and everything to do with keeping people apart. *See* Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) (non-essential workforces must be reduced 100% to reduce "community contact transmission of COVID-19") (cited Compl. ¶ 36).

Judge Caproni recently denied a preliminary injunction sought by a business similarly impacted by COVID-19 because "New York law is clear that this kind of business interruption [claim] needs some damage to the property" before there is coverage. *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, 1:20-cv-03311-VEC, ECF No. 24-1, at 15 (S.D.N.Y. May 14, 2020) (transcript). Restricted *access* to the property was not enough. *Id*. (Judge Caproni ruled from the bench, and the plaintiff dismissed the case before a written opinion was issued.)[1]

The ruling in *Social Life* is consistent with the leading New York case on these issues, *Roundabout Theatre Co. v. Contin. Cas. Co*., 751 N.Y.S.2d 4 (1st Dep't 2002). In *Roundabout*, the scaffolding of a midtown building collapsed, causing New York City to close certain surrounding blocks, and resulting in a Broadway theater having to "cancel 35 performances of *Cabaret*." *Id*. at 5. The First Department found there was no coverage because, even though the theater was inaccessible, there was no "physical damage to the insured's property." *Id*. at 7.

Along the same lines, Judge Engelmayer in *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co*., 17 F. Supp. 3d 323 (S.D.N.Y. 2014), concluded that a law firm could not recover when preemptive power outages in anticipation of Hurricane Sandy rendered the firm's offices inaccessible. He explained that the policy language "requires some form of actual, physical damage to the insured premises to trigger" coverage, as opposed to "forced closure of the premises for reasons exogenous to the premises themselves." *Id*. at. 331. Here, too, the complaint alleges only a forced closure based on an "exogenous" reason—the governmental orders reducing the in-person workforces of non-essential businesses like Guy Hepner in order to slow the spread of the virus.

---

[1] A Michigan court also recently concluded that business disruption from COVID-19 governmental workforce reduction orders does not constitute direct property loss. *See Gavrilides Mgmt. Co. et al. v. Michigan Ins. Co*., Case No. 20-258-CB-C30 (Mich. Circuit Court, Ingham County July 1, 2020) (transcript available at https://tinyurl.com/yd4ykxce).

Hon. Lorna G. Schofield
August 3, 2020
Page 3

**Steptoe**

## II.  The Governmental Orders Were Not Issued Because of Property Damage

The only other type of coverage sought, under the Civil Authority provision, is triggered when "access to" an insured premises is "specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss"— defined as a "risk of direct physical loss"—"in the immediate area." (Compl. ¶¶ 27-28.) But, as discussed, there was no "direct physical loss" at all. The complaint does not allege that any particular property was damaged.

The Second Circuit's decision in *United Air Lines, Inc. v. Insurance Company of the State of Pennsylvania*, 439 F.3d 128 (2d Cir. 2006) is instructive on this point. There, United Airlines tried to invoke a substantially similar provision when Reagan National Airport was closed following the September 11, 2001 terrorist attacks. *Id*. at 129. United highlighted the property damage nearby, at the Pentagon. *Id*. But the Second Circuit found there was no coverage because the government's "decision to halt operations at the Airport indefinitely was based on fears of future attacks," not about the fact that the Pentagon was damaged. *Id*. at 134. Here, as in *United*, the government action was not predicated on any property damage, but rather was put in place to limit the potential spread of the virus in order protect residents of New York.

## III.  Guy Hepner Cannot Recover Against Hartford Fire

Guy Hepner's insurance contract is concededly only with Sentinel (Compl. ¶ 2), yet Guy Hepner has wrongly added as a defendant an affiliate of Sentinel, Hartford Fire.

Since Hartford Fire is incorporated and has its principal place of business out of state (*id*. ¶ 15), the court lacks general personal jurisdiction over it. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014). Specific personal jurisdiction is likewise lacking because the claims here do not arise out of Hartford Fire's activity in New York. *Brown v. Lockheed Martin Corp*., 814 F.3d 619, 624 (2d Cir. 2016). Hartford Fire should therefore be dismissed on jurisdictional grounds.

For similar reasons, Guy Hepner lacks standing to sue Hartford Fire. New York law is clear "that the terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries of the contract." *Rajamin v. Deutsche Bank Nat. Trust Co*., 757 F.3d 79, 86 (2d Cir. 2014). Hartford Fire is neither.

## IV.  Proposed Briefing Schedule

We are prepared to file a motion within a week of the Court's authorization, and would propose a briefing schedule that follows Local Civil Rule 6.1(b), with two weeks for an opposition, and one for reply.

*  *  *

We thank the Court for its consideration of these matters.

Hon. Lorna G. Schofield
August 3, 2020
Page 4



Respectfully,

*/s/ Charles Michael*

Charles Michael

cc: All Counsel of Record (via ECF)