Joseph N. Casas, JD, MBA
CEO & Managing Attorney
*Licensed in Ill. and CA.*

Dennis C. Postiglione, JD
Partner, *Licensed in TX.*

John V. Golaszewski, JD
Partner, *Licensed in N.Y.*

Ludmila Khomiak, JD
Partner, *Licensed FLA..*

Monica Padilla JD
Partner, *Licensed in CA.*




Global Reach. Local Solutions.

**John V. Golaszewski**, JD
*Partner* ±

± Admitted to practice
in New York

1745 Broadway
17th Floor
New York, N.Y. 10019

Main: 855.267.4457
Fax: 855.220.9626

www.casaslawfirm.com

August 10, 2020

**VIA ECF**
Hon. Lorna G. Schofield
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

**Re: *11012 Holdings, Inc. v. Hartford Fire Insurance Co. et al.*, 20-cv-4471-LGS**

Dear Judge Schofield:

On behalf of 11012 Holdings, Inc. d/b/a Guy Hepner ("Plaintiff"), we respectfully submit this response to the August 3, 2020 pre-motion letter of Hartford Fire Insurance Company ("Hartford") and Sentinel Insurance Company, Ltd. ("Sentinel") (collectively, "Defendants") (Dkt. 7).

As detailed in the Complaint (Dkt. 1), this case concerns Defendants' obligations to cover losses Plaintiff incurred when its business was ordered shut due to the ongoing COVID-19 pandemic. As made clear by the New York Court of Appeals, "[t]he purpose served by business interruption coverage cannot be clearer – to ensure that [the insured] ha[s] the financial support necessary to sustain its business operation in the event disaster occurred." *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York.*, 10 N.Y. 3d 187, 194 (N.Y. 2008). The COVID-19 pandemic is one such disaster. With the goal of preventing the spread of that disaster, civil authorities in New York ordered the closure of many businesses, including Plaintiff's art gallery. Plaintiff paid premiums to Defendants for business interruption, extra expense, and civil authority insurance with the expectation that when a disaster like the COVID-19 pandemic hit, it would be able to sustain operations and pay employees. Defendants now seek to extricate themselves from their obligations to Plaintiff under their insurance agreement with a proposed Rule 12 motion.

***Business Income and Extra Expense Coverage***

Plaintiff's policy provides coverage for the loss of business income due to the suspension of operations during a "period of restoration," and extra expenses incurred to avoid and/or minimize the suspension of its business. Defendants' position is that since the mandated closure of Plaintiff's practice caused no structural damage to Plaintiff's dental practice –*i.e.*, no "direct physical loss of or physical damage to" the practice -- neither business interruption nor extra expense coverage is triggered.

In support of this position, Defendant relies primarily on *Roundabout Theater Co. v. Contin. Cas. Co.*, 751 N.Y.S. 2d 4 (1st Dep't 2002) and a recent Southern District of New York case interpreting same, *Social Life Magazine, Inc. v. Hartford Ins. Co*., 1:20-cv-03311-VEC, ECF No. 24-1, at 15 (S.D.N.Y. May 14, 2020). But because the stay-at-home orders denied Plaintiff of the ability to legally access and operate its art gallery, Defendants' reliance on this this authority is misplaced. Recovery for a claim of business interruption coverage in *Roundabout* was denied after the city blocked access to a theater forcing the cancellation of performances. However, the First Department specifically noted that there was no "provision in the policy extending coverage where access to the property is denied." 751 N.Y.S. 2d at 9. In Plaintiff's policy, as set forth more fully below, civil authority coverage provides benefits and indemnity when access to the property is denied by governmental edict. *Roundabout Theatre* does not help Defendants because the Plaintiff in that case did not have civil authority coverage.

Similarly unavailing is Defendants' reliance on *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F.Supp.3d 323 (S.D.N.Y. 2014). In that case, this the court specifically held that "requiring 'physical loss or damage,' does not require that the physical loss or damage be tangible, structural, or even visible." 17 F.Supp. at 330. Here, the presence of the invisible COVID-19 virus, and the fear of contagion, was the direct cause of the shutdown of Plaintiff's gallery and constitutes the "direct physical loss of or direct physical damage to property," just as "odors, noxious fumes, and water contamination" has been deemed sufficient to trigger such coverage elsewhere. *Id. See also TRAVCO Ins. Co. v. Ward*, 715 F.Supp.2d 699, 708 (E.D. Va 2010), *aff'd*, 504 Fed. Appx. 251 (4th Cir. 2013) (insured suffered covered loss under policy when sulfuric gas was present on the premises because "physical damage to the property is not necessary, at least where the building in question has been rendered unusable by physical forces."); *Essex. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) (unpleasant odor rendering property unusable constituted physical injury to property); *Motorists Mutual Ins. Co. v. Hardinger*, 131 Fed. Zppx. 823, 825-27 (3d Cir. 2005) (contamination of well water constitutes "direct physical loss" to home if it rendered it unusable); *Sentinel Mgmt. Co. v. New Hamshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) ("Direct physical loss also may exist in the absence of structural damage to the insured property" and holding that "release asbestos fibers have contaminated the buildings, creating a hazard to human health constituted physical loss.")

***Civil Authority Coverage***

In addition to business interruption and extra expense coverage, Plaintiff also purchased civil authority coverage from Defendants, which covers a loss in business income sustained when Plaintiff is denied access to its premises by order of a civil authority. Defendants' position -- that the civil authority orders were not issued <u>because</u> of property damage -- rushes past the fact that, as detailed *supra*, physical loss or damage need not be "tangible, structural or even visible," *Newman*, 17 F.Supp. 3d at 330, and that gases, odors and other contamination have been deemed either sufficiently "physical" and/or property damage by other courts. As also noted, the fact that Defendants acknowledge Plaintiff's civil authority coverage distinguishes this case from *Roundabout Theatre*, 302 A.D. 2d at 9, where no such coverage existed. *Accord, Houston Cas. Co. v. Lexington Ins. Co.*, No. CIV.A H-05-1804, 2006 WL 7348102, at *6 n.13 (S.D.Tex. June 15, 2006) (noting *Roundabout Theatre* "did not involve coverage under a civil authority" provision), *adopted*, 2006 WL 8446160 (S.D. Tex. July 11, 2006).

Contrary to Defendants' argument, the Second Circuit's decision in *United Air Lines, Inc. v. Insurance Company of the State of Pennsylvania*, 439 F.3d 128 (2d Cir. 2006) does not help it because the shutdown of Reagan National Airport following the September 11th attacks at issue in that case stemmed from government "fear of future attack," *i.e.*, it was admittedly speculative. Here, COVID-19 was ravaging New York City when Plaintiff's gallery was shut down and best estimates tell us that more than 23,000 people died in New York City subsequent to the first civil authority orders mandating Plaintiff's closure were issued in March 2020. Thus, the speculative shut down at issue in *United Airlines* has no bearing here.

Finally, to the extent Hartford was wrongly named as a defendant in this case Plaintiff will considering dismissing it from the case before Defendants' Rule 12 motion and will confer with Defendants' counsel concerning same.

We thank the Court for its attention to the issues herein.

Respectfully,

By:/s/ John V. Golaszewski
John V. Golaszewski

Cc: All Counsel of Record (via ECF)