**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 10012 HOLDINGS, INC. d/b/a GUY HEPNER,<br><br>*Plaintiff*,<br><br>- against -<br><br>SENTINEL INSURANCE COMPANY, LTD.<br><br>*Defendant*. | Case No. 10-cv-4471-LGS |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

**THE CASAS LAW FIRM, P.C.**
John V. Golaszewski
1740 Broadway, 15th Floor
New York, New York
T: 646.872.3178
F: 855.220.9626

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1
RELEVANT FACTS ...................................................................................................................... 1
STANDARD OF REVIEW ............................................................................................................ 3
ARGUMENT .................................................................................................................................. 4
    I.   Plaintiff Has Pled Physical Loss or Damage Necessary to Trigger Business Income Coverage and Extra Expense Coverage ............................................................................ 4
        A.   *Principles of Interpretation.* ................................................................................... 4
        B.   *The Sentinel Policy is Ambiguous.* ........................................................................ 5
    II.  Plaintiff is Entitled to Civil Authority Coverage. .......................................................... 12
CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) .................................................................................................. 3

*Burger King Corp. v. Horn & Hardart Co.*
    893 F.2d 525 (2d Cir. 1990) ...................................................................................... 4

*Essex. v. BloomSouth Flooring Corp.*
    562 F.3d 399 (1st Cir. 2009) ................................................................................... 10

*Farmers Ins. Co. of Oregon v. Trutanich*
    858 P.2d 1332 (Or. Ct. App. 1993) ........................................................................... 9

*General Mills, Inc. v. Gold Medal Ins. Co.*
    622 N.W. 2d 147 (Minn. Ct. App. 2001) .................................................................. 9

*Goldman v. Belden*
    754 F.2d 1059 (2d Cir. 1985) .................................................................................... 3

*Hampton Foods, Inc.  v. Aetna Cas. & Sur. Co.*
    787 F.2d 349 (8th Cir. 1986) ..................................................................................... 9

*India.com v. Dalal*
    412 F.3d 315 (2d Cir. 2005) ....................................................................................... 5

*Mansion Hills Condo Ass'n v. Am. Family Mut. Ins. Co.*
    62 S.W. 3d 633 (Mo. App. E.D. 2001) ..................................................................... 8

*Matzner v. Seaco Ins. Co.*,
    1998 Mass. Super. LEXIS 407 (Mass. Super. 1998) ................................................ 9

*McCarthy v. Dun & Bradstreet Corp.*
    482 F.3d 184 (2d Cir. 2007) ...................................................................................... 3

*MDW Enterprises, Inc. v. CNA Ins. Co.*
    (2d Dep't. 2004) 4 A.D.3d 338, 340–341 .............................................................. 4, 6

*Mehl v. The Travelers Home & Marine Ins. Co.*
    No. 16-cv-1325-CDP (E.D. Mo. May 2, 2018) ......................................................... 9

*Motorists Mutual Ins. Co. v. Hardinger*
    131 Fed. Zppx. 823 (3d Cir. 2005) .......................................................................... 10

*Murray v. State Farm Fire and Cas. Co.*
   203 W.Va 477, 509 S.E. 2d 1 (1998) ............................................................................... 4

*Nautilus Grp., Inc. v. Allianz Global Risks US*
   No. C11-5281BHS, 2012 WL 760940 (W.D. Wash. Mar. 8, 2012) .......................... 8

*Newman Myers Kreines Gross Harris, P.C. v. Great American Northern Ins. Co.*
   17 F.Supp. 3d 323 (S.D.N.Y. 2014) ............................................................................. 11

*Parks Real Estate Purchasing Grp. v. St. Paul Fire and Marine Ins. Co.*
   472 F.3d 33 (2d Cir. 2006) ............................................................................................ 4

*Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*
   311 F.3d 226 (3d Cir. 2002) .......................................................................................... 9

*Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*
   CV-01-1362-ST, 2002 WL 31495830 (D. Or. June 18, 2002) .................................. 9

*Roundabout Theater Co. v. Contin. Cas. Co.*
   751 N.Y.S.2d 4 (1st Dep't 2002) ................................................................................. 10

*Sea Ins. Co. v. Westchester Fire ins. Co.*
   51 F.3d 22 (2d Cir. 1995) .............................................................................................. 5

*Sentinel Mgmt. Co. v. New Hamshire Ins. Co.*
   563 N.W.2d 296 (Minn. Ct. App. 1997) .................................................................... 10

*St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*
   No. 2;97-cv-153 BB, 1999 WL 33537191 (N.D. Miss. Nov. 4, 1999) ..................... 12

*State of New York v. Home Indem. Co.*,
   66 N.Y.2d 669, 671 (1985) ........................................................................................ 4, 5

*Studio 417, Inc. v. The Cincinnati Ins. Co.*
   20-cv-3127-SRB, 2020 WL 4692385 (W.D. Mo., Aug. 12, 2020) ............................ 8

*TRAVCO Ins. Co. v. Ward*
   715 F.Supp.2d 699, 708 (E.D. Va 2010), *aff'd*, 504 Fed. Appx. 251 (4th Cir. 2013) .............. 10

*United Air Lines, Inc. v. Insurance Company of the State of Pennsylvania*
   439 F.3d 128 (2d Cir. 2006) ........................................................................................ 14

*Vogt v. State Farm Life Ins. Co.*
   963 F.3d 753 (8th Cir. 2020) ........................................................................................ 8

*Warnaco, Inc. v. VF Corp.*
   844 F.Supp. 940 (S.D.N.Y. 1994) ................................................................................ 3

*Western Fire Ins. Co. v. First Presbyterian Church*
   165 Colo. 34, 437 P.2d 52 (1968)............................................................................................. 9

*White v. Continental Cas. Co.*
   9 N.Y. 3d 264 (2002) ................................................................................................................ 4

**Other Authorities**
Emergency Executive Order, eeo-107 of Mayor Bill de Blasio (Apr. 14, 2020) ......................... 14
Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) ................................................................... 3

**Treatises**
2 Ostrager & Newman, *Insurance Coverage Disputes* § 21.01[a], at 1306 .................................. 4

## INTRODUCTION

This case concerns the refusal of defendant Sentinel Insurance Company, Ltd. ("Sentinel" or "Defendant") to cover losses incurred by 10012 Holdings, Inc. d/b/a Guy Hepner ("Plaintiff" or "Guy Hepner") when the latter's Manhattan-based art gallery was ordered shut in March 2020 in response to the ongoing COVID-19 pandemic. In an effort to avoid answering for its breach of the insurance agreement it entered with Guy Hepner, Sentinel advances on its Rule 12 motion the specious claim that absent structural damage to Guy Hepner's premises, Sentinel is released from any coverage obligation it may have had under the Business Income, Extra Expense, and/or Civil Authority provisions Guy Hepner purchased. That Sentinel takes such self-serving position now, in the face of an onslaught of claims it is facing relating to the COVID-19 pandemic, does not mean that is what any party intended when they entered the agreement, and this is especially so considering the various ambiguities in the Sentinel-drafted policy. Though as discussed herein these ambiguities alone are more than enough basis for this Court to deny Sentinel's Rule 12 motion, denial is all the more appropriate considering Sentinel's heavy reliance in its motion on the provably false claim that "loss" and "damage" are synonymous, a position that cannot be squared with the plain language of the policy and which has been rejected by courts reviewing similar policy language around the country. For the reasons set forth below, Guy Hepner submits that this Court should follow suit.

## RELEVANT FACTS

Guy Hepner is a Manhattan-based art gallery, Dkt. 1 ("Compl."), ¶ 1, which in April 2019 purchased an all-risk business owner's insurance policy from Sentinel, Policy number 13SBATQ2841SB (the "Policy"), to protect the gallery and its income from the operation of same. *Id.* ¶ 20. The Policy is an all-risk policy, meaning that all risks of loss are covered unless

they are specifically excluded or limited in the Policy. *Id.* ¶ 21. The Policy specifically provided

Business Income, Extra Expense, and Civil Authority coverage. *Id.*, ¶¶ 22, 26, 27. As to Business

Income coverage, Sentinel represented as follows:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss. "scheduled premises", caused by or resulting from a Covered Cause of Loss.

*Id.*. ¶ 23 (quoting Policy, Special Property Coverage Form § A.5.o(1)). The Policy defines

"suspension" as: (a) "The partial slowdown or complete cessation of your business activities; or

(b) That part of all of the "scheduled premises" is rendered untenantable as a result of a Covered

Cause of Loss if coverage for Business Income applies to the policy," (*id.*, ¶ 25 (quoting Policy,

Special Property Coverage Form § A.5.o(5)), and defines "Covered Cause of Loss" as "RISKS

OF DIRECT PHYSICAL LOSS," unless otherwise excluded. *Id.*, ¶ 28 (quoting Policy, Special

Property Coverage Form § A.3) (capitalization in Policy). As to Extra Expense coverage,

Sentinel represented as follows:

> We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

*Id.* ¶ 26 (quoting Policy, Special Property Coverage Form § A.5.p). As to Civil Authority

coverage, Sentinel represented as follows:

> (1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".

2

> (2) The coverage for Business Income will begin 72 hours after the order of a civil authority and coverage will end at the earlier of:
>
> (a) When access is permitted to your "scheduled premises"; or
> (b) 30 consecutive days after the order of the civil authority.

*Id.* ¶ 27 (quoting Policy, Special Property Coverage Form § A.5.q). Starting in March 2020, and pursuant to civil authority orders issued by the Governor of the State of New York in response to the outbreak of COVID-19 in New York City, access to and occupancy of Guy Hepner's art gallery were first ordered diminished and then outright prohibited. *Id.* ¶ 8.[1] Guy Hepner promptly alerted Sentinel of the forced cessation of its operations and sought insurance coverage, and by letter dated April 3, 2020 Sentinel denied the claim on the grounds that COVID-19 "did not cause property damage at [Plaintiff's] place of business or in the immediate vicinity." *Id.* ¶¶ 38-39.

## STANDARD OF REVIEW

A complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Since a district court's function on a Rule 12(b)(6) motion is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient," *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985), all allegations are accepted as true and that the court must draw all reasonable inferences in plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). *See also, Warnaco, Inc. v. VF Corp.*, 844 F.Supp. 940, 945 (S.D.N.Y. 1994) ("A court may not dismiss a complaint unless the movant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claims

---

[1] *See* Compl., ¶ 36, citing, *inter alia*, Executive Order No. 202.8, which ordered, among other things, that effective at 8 p.m. on Sunday, March 22, 2020, all non-essential businesses statewide would be closed.

3

which would entitle him to relief." (Internal quotations and citations omitted)). Here, Plaintiff has met the low threshold necessary to overcome a motion under Rule 12(b)(6) by alleging, *inter alia*, that it "suffered a direct physical loss of and damage to his property," that such loss and damage was a direct result of "COVID-19 and the orders of civil authorities," and that Guy Hepner's "suspensions and losses triggered Business Income coverage under the Policy." Compl., ¶¶ 61-62.

## ARGUMENT

**I.      Plaintiff Has Pled Physical Loss or Damage Necessary to Trigger Business Income and Extra Expense Coverage.**

   A. *Principles of Interpretation*.

Guy Hepner's Policy is an all-risk policy, under which "losses caused by *any* fortuitous peril not specifically excluded under the policy will be covered." *Parks Real Estate Purchasing Grp. v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting 2 Ostrager & Newman, *Insurance Coverage Disputes* § 21.01[a], at 1306) (citations omitted) (emphasis in *Parks Real Estate*); *see also Murray v. State Farm Fire and Cas. Co.*, 203 W.Va 477, 509 S.E. 2d 1, 7 (1998) ("Under an all[-]risk policy, recovery is allowed for all losses arising from any fortuitous cause, unless the policy contains an express provision excluding loss from coverage." ) Although, "under an all-risks policy, the insured bears the burden of showing that it suffered a loss and that the loss is fortuitous … the insured need not demonstrate the precise cause of damage for the purpose of proving fortuity." *Churchill v. Factory Mut. Ins. Co.*, 234 F.Supp.2d 1182, 1189 (W.D. Wash. 2002).

While "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning," *White v. Continental Cas. Co.* 9 N.Y. 3d 264 (2002), it is well-established that where "the language in the insurance contract is ambiguous and susceptible of two

4

reasonable interpretations, the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact." *State of New York v. Home Indem. Co.*, 66 N.Y.2d 669, 671 (1985) ("*Home Indemnity*"). "Contract language is ambiguous if it is reasonably susceptible to more than one interpretation, and a court makes this determination by reference to the contract alone," *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990), and implicit in *Home Indemnity*'s reliance on extrinsic evidence to solve an insurance policy ambiguity is the fact that any ambiguity as to policy limitations forecloses the potential for disposition on a Rule 12 motion. What's more, the equally well-settled principle that any "ambiguity must be resolved against the insurer which drafted the contract," *Home Indemnity*, 66 N.Y. 2d at 671, underscores the heightened scrutiny a court will apply to an insurer's attempt to escape coverage obligations in an insurance contract it drafted. *See Sea Ins. Co. v. Westchester Fire ins. Co.*, 51 F.3d 22, 26 (2d Cir. 1995) (noting that to restrict coverage, "an insurer must establish that the exclusion is stated in clear an unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." (internal quotations omitted)).

    B.  *The Sentinel Policy is Ambiguous*.

It is against the backdrop of these core policy interpretation rules that Sentinel tells the Court that under no reading of the Policy can the Business Income or Extra Expense coverage Guy Hepner purchased be triggered.[2] For a few reasons, such argument is deeply flawed:

*First*, by Sentinel's chosen language, the Policy obligates Sentinel to "pay for direct physical loss of ___or___ physical damage to Covered Property…."[3] As detailed through its brief,

---

[2] *See* Dkt. 20, Sentinel's Memorandum of Law in Support of its Motion to Dismiss ("Mov. Br."), at 6.

[3] Policy, § A, Coverage (emphasis added). A copy of the Policy is found at Exhibit A to the September 1, 2020 Declaration of Charles Michael, Dkt. 21.

Sentinel's position boiled down is that "loss" and "damage" are synonymous, and that the lack of structural damage to Guy Hepner's gallery means it is entitled to no Business Income coverage. But since Sentinel declined in the Policy to define either "loss" or "damage," such post hoc stabs at interpretation must be rejected, because while we may not know precisely what these terms mean, we know for sure they cannot and do not mean the same thing. This is because in New York "effect and meaning must be given to every term in the contract, and reasonable effort must be made to harmonize all of its terms." *India.com v. Dalal*, 412 F.3d 315, 324 (2d Cir. 2005) (citations and quotations omitted). This means that "loss" and "damage" cannot, as a matter of contract interpretation, mean the same thing and that "loss" is thus distinct from "damage." Assuming *arguendo* "damage" means structural damage to Guy Hepner's gallery, the parties are nevertheless left with the glaring ambiguity concerning the meaning of "loss." Sentinel's failure to clearly define these critical terms must be interpreted in favor of the Plaintiff, *see Home Indemnity*, 66 N.Y. 2d at 671, and as a sophisticated insurer, Sentinel's selection of separate terms must be deemed to have meaning and should not merely be glossed over to deny coverage.

*Second,* Sentinel tells this Court that "Guy Hepner's suspension of operations must have been <u>*caused by*</u> 'direct physical loss of or direct physical damage to *property*," Mov. Br. at 6 (emphasis added), but that is emphatically *not* what the Policy provides, and the coverage prerequisites are not exclusively causal. To the contrary, the Policy provides that Sentinel *"*will pay for direct physical loss of or physical damage to <u>Covered Property</u> … caused by <u>***or resulting from***</u> a Covered Cause of Loss."[4] (emphasis added). Sentinel thus agreed to cover losses *resulting* from a "Covered Cause of Loss," defined by Sentinel only as:

---

[4] Policy, Special Property Coverage Form, § A. Coverage.

RISKS OF DIRECT PHYSICAL LOSS unless the loss is: a. Excluded in Section B., EXCLUSIONS; or; b. Limited in Paragraph A.4 Limitations; the follow.[5]

What this means is that Sentinel agreed to cover a "loss" resulting from a "risk of direct physical loss." A global pandemic brought about by the infestation of novel coronavirus in New York City is exactly such "risk of direct physical loss," nothing in the Policy says otherwise, and "when an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language." *MDW Enterprises, Inc.,* 4 A.D.3d 338, 340–341 (2d Dep't 2004) (citations omitted). "Such exclusions or exceptions from policy coverage must be specific and clear in order to be enforceable, and they are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction" *Id.* (citations omitted).

*Third*, in arguing that coverage applies only to damage to the structure of Guy Hepner's gallery, Sentinel seeks to redraft and narrow its Policy in yet another way by replacing the Policy's use of "Covered Property" with "property." But the Policy contemplated coverage for losses to "Covered Property," defined by Sentinel as, *inter alia*, "Property you own that is used in your business," "Property of others that is in your care, custody or control" and "Leased personal property for which you have contractual responsibility to insure…."[6] Such provisions, particularly applicable to an art gallery, foreclose Sentinel's attempt to rely on cases from around the United States that have dismissed COVID-19 business interruption cases on the grounds that the virus caused no structural damage to an insured's real property. *See* Mov. Br. at 7-9. Since Sentinel's argument that Guy Hepner must show "property damage" to trigger business interruption coverage is antagonistic to the plain language of the Policy, it must be rejected

---

[5] *Id.*, § A.3, Covered Causes of Loss.

[6] *Id.* § A(1)(b)(1), (3), (5).

7

because while "Covered Property" in the Policy does include buildings, structures, fixtures, and the like, *see, e.g.,* Policy, § A(1)(a), it also includes much more.

*Fourth*, though Sentinel predicably clings to a those handful of cases that have in recent months held that COVID-19 does not cause "property damage," such decisions are irrelevant to this case because none analyzed a policy which provided coverage for both "loss" and "damage" resulting from unexcluded risks, as Sentinel's Policy provided Guy Hepner.  The only court of which Plaintiff is aware that has evaluated such policy language has *rejected* an insurer's attempt to extricate itself from the consequences of its own contractual ambiguities on a Rule 12 motion. Because the policy language -- "loss or damage" -- is identical here, it is worth quoting the Western District of Missouri's decision from last month at length on this point:

> Upon review of the record, the Court finds that Plaintiffs have adequately stated a claim for direct physical loss.  First, because the Policies do not define a direct "physical loss" the Court must "rely on the plain and ordinary meaning of the phrase." *Vogt* [*v. State Farm Life Ins. Co.*], 963 F.3d [753] at 763 [(8th Cir. 2020)];*Mansion Hills Condo Ass'n v. Am. Family Mut. Ins. Co.*, 62 S.W. 3d 633, 638 (Mo. App. E.D. 2001) (recognizing that standard dictionaries should be consulted for determining ordinary meaning). The Merriam-Webster dictionary defines "direct" in part as "characterized by close logical, causal or consequential relationship." Merriam-Webster, www.merriam-webster.com/dictionary/direct (last visited August 12, 2020). "Physical" is defined as "having material existence: perceptible especially through the senses and subject to the laws of nature." Merriam-Webster, www.merriam-webster.com/dictionary /physical (last visited August 12, 2020). "Loss" is the "act of losing possession" and "deprivation." Merriam-Webster, www.merriam-webster.com/dictionary/loss (las visited August 12, 2020). Applying these definitions, Plaintiffs have adequately alleged a direct physical loss. Plaintiffs allege a causal relationship between COVID-19 and their alleged losses. Plaintiffs further allege that COVID-19 "is a physical substance," that it "live[s] on" and is "active on inert physical surfaces," and is also "emitted into the air."…. COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it "unsafe and unusable, resulting in direct physical loss to the premises and property." …. Based on these allegations, the Amended Complaint plausibly alleges a "direct physical loss" based on "the plain and ordinary meaning of the phrase. *Vogt*, 963 F.3d at 763.

*Studio 417, Inc. v. The Cincinnati Ins. Co.*, 20-cv-3127-SRB, 2020 WL 4692385, at * 4 (W.D. Mo., Aug. 12, 2020). Noting that it was incumbent on a court to give meaning to all contractual terms, *Studio 417* rejected the insurer's attempt (echoed by Sentinel here) to argue that "loss" and "damage" mean the same thing:

> Defendant conflates "loss" and "damage" in support of its arguments that the Policies require a tangible, physical alteration. However, the Court must give meaning to both terms. *See Nautilus Grp., Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940, at *7 (W.D. Wash. Mar. 8, 2012) (stating that "if 'physical loss' was interpreted to mean 'damage,' then one or the other would be superfluous.")

*Studio 417,* 2020 WL 4692385, at *4. *Accord, Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.,* 787 F.2d 349 (8th Cir. 1986) (holding ambiguous a policy which insured against "loss of or damage to the property insured… resulting from all risks of direct physical loss."); *Mehl v. The Travelers Home & Marine Ins. Co.*, No. 16-cv-1325-CDP (E.D. Mo. May 2, 2018) (denying insurer's motion for summary judgment where the policy did not define "physical loss" and the insurer "point[ed] to no language in the policy that would lead a reasonable insured to believe that actual physical damage is required for coverage.")

*Fifth*, not only did Sentinel decide not to define "loss" in the Policy, and not only must the interpretation of "loss" it tries to hoist on the Court -- *i.e.*, "loss" means "damage" -- be rejected as a matter of contractual interpretation, but courts around the country have repeatedly determined that a policy that "require[es] 'physical loss or damage,' does not require that the physical loss or damage be tangible, structural, or even visible." *Newman Myers Kreines Gross Harris, P.C. v. Great American Northern Ins. Co.*, 17 F.Supp. 3d 323, 330 (S.D.N.Y. 2014). *See also, Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) ("When the presence of large quantities of asbestos in the air is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner."); *TRAVCO*

9

*Ins. Co. v. Ward*, 715 F.Supp.2d 699, 708 (E.D. Va 2010), *aff'd*, 504 Fed. Appx. 251 (4th Cir. 2013) (insured suffered covered loss under policy when sulfuric gas was present on the premises because "physical damage to the property is not necessary, at least where the building in question has been rendered unusable by physical forces."); *Essex. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) (unpleasant odor rendering property unusable constituted physical injury to property); *Motorists Mutual Ins. Co. v. Hardinger*, 131 Fed. Zppx. 823, 825-27 (3d Cir. 2005) (contamination of well water constitutes "direct physical loss" to home if it rendered it unusable); *Sentinel Mgmt. Co. v. New Hamshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) ("Direct physical loss also may exist in the absence of structural damage to the insured property" and holding that "release asbestos fibers have contaminated the buildings, creating a hazard to human health constituted physical loss."); *Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts,* CV-01-1362-ST, 2002 WL 31495830, at *9 (D. Or. June 18, 2002) ("the inability to inhabit a building [is] a 'direct, physical loss' covered by insurance."); *Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 437 P.2d 52 (1968) (gasoline vapors which penetrated the foundation of the insured church and accumulated, rendering building uninhabitable)*; Matzner v. Seaco Ins. Co.*, 1998 Mass. Super. LEXIS 407 (Mass. Super. 1998) (carbon monoxide at levels sufficient to render building uninhabitable); *Farmers Ins. Co. of Oregon v. Trutanich*, 858 P.2d 1332 (Or. Ct. App. 1993) (building rendered uninhabitable by odor from a methamphetamine lab). These cases taken together underscore the point that where a business premise is uninhabitable and unusable as was Guy Hepner's art gallery, the business owner has suffered a loss.

*Sixth*, Sentinel relies heavily on *Roundabout Theater Co. v. Contin. Cas. Co*, 302 A.D. 2d 1, 751 N.Y.S.2d 4 (1st Dep't 2002), but that case has no bearing here because the policy there

10

specifically stated that coverage was limited to losses sustained "as a direct and sole result of loss of, damage to or destruction of property or facilities (including the theatre building occupied … by the Insured…." *Roundabout Theater*, 302 A.D. 2d at 2. Sentinel's argument that Guy Hepner's claims here are "predicated on *exactly* the same 'loss of use' argument," Mov. Br. at 10 (emphasis in original) makes no sense because while the Policy here specifically provides that Sentinel will "pay for direct physical loss of <u>or</u> physical damage to <u>Covered Property</u>" the policy in *Roundabout Theater* covered only loss, damage, or destruction to "property and facilities," *i.e.,* the theatre building itself.  As discussed *supra*, "Covered Property" is far more broadly defined that the actual structure that houses Guy Hepner's gallery.  Considering this, *Roundabout Theater* supports Plaintiff's position because it underscores that insurers are free to draft their policies as broadly or narrowly as they like, and Sentinel could have easily drafted the Policy to only provide coverage when there is actual damage to Guy Hepner's gallery.  It did not do so. Further, the summary judgment decision in *Newman Myers,* also cited by Sentinel, is similarly unavailing because the policy language at issue there (like that in *Roundabout Theater*) provided business interruption coverage in the event of "direct physical loss or damage by a covered peril to <u>property</u>," *Newman Myers*, 17 F. Supp.3d at 328-39 (emphasis added), which is clearly distinct from the "Covered Property" to which Sentinel agreed to provide coverage.

      *Seventh*, Sentinel's "period of restoration" argument, which asserts that the absence of a need for structural repair means *ipso facto* an insured suffered no loss or damage, Mov. Br. at 11-12, cannot be squared with this court's holding (echoed throughout the country) that a policy that "require[es] 'physical loss or damage,' does not require that the physical loss or damage be tangible, structural, or even visible." *Newman Myers,* 17 F. Supp. 3d at 330 (citing cases). *See also, supra*, at 9-10 (citing cases).  The types of "odors, noxious fumes and water

contamination," *Newman Myers,* 17 F.Supp. 3d at 330, which have been deemed to constitute physical loss or damage that trigger business interruption coverage clearly do not require that the premises be "repaired, rebuilt or replaced," and thus to the extent Sentinel is of the position that "repair, rebuild, or replacement" is a prerequisite to the conclusion of the "period or restoration," it has effectively drafted a "period of restoration" clause with potentially no end date, yet another ambiguity in its own Policy which mandates denial of its Rule 12 motion.

Considering the above, Sentinel's motion to dismiss the Complaint under Rule 12(b)(6) should be denied.

## II.     Plaintiff is Entitled to Civil Authority Coverage.

Sentinel next tries to escape its Civil Authority coverage obligations by again relying on the same COVID-19 cases that analyzed different insurance policies providing different types of coverage. But because Plaintiff has adequately alleged that is suffered a physical loss, because such loss is applicable to property other than real property, and because none of these courts analyzed policy language that provided coverage for "direct physical loss of or physical damage to Covered Property" where Covered Property specifically includes more than just the structural premises, these cases are not relevant to this Court's analysis.

Sentinel suggests that rather than being subject to the executive orders of the Governor of New York, Guy Hepner's gallery was not "specifically prohibited by order of a civil authority" because the owner or employee could go to the gallery for routine functions, like retrieving mail. Such argument misconstrues the very function of an art gallery, whereby potential customers traffic the gallery for the purpose of examining, evaluating, and ultimately purchasing art.  An art gallery, by definition, is predicated on the presence of a potential customer in the gallery itself. The fact that Guy Hepner employees were not forbidden from picking up the mail at the gallery

does not mean the gallery was accessible to patrons, and the cases cited by Sentinel miss the mark because they admittedly concern reductions, but not outright prohibitions, of certain activities. *See, e.g.*, *St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*, No. 2;97-cv-153 BB, 1999 WL 33537191, at *3 (N.D. Miss. Nov. 4, 1999) (civil authority coverage not triggered by bridge closure that reduced casino-hotel's business, but did not cut off access). The Governor of the New York specifically prohibited, among other businesses, Guy Hepner's operation of its gallery. Had Guy Hepner ignored those mandates, it would have been found in violation of New York's Public Health Law. *See* Executive Order No. 202.8, dated March 20, 2020 ("Any business violating the above order shall be subject to enforcement as if this were a violation of an order pursuant to section 12 of the Public Health Law."). This would have subjected Guy Hepner to thousands of dollars of fines, Pub. Health L. § 12-1, and court proceedings initiated by the Health Commissioner, Pub. Health L. §§ 12-2, 12-4, who could also request that the Attorney General bring an action for injunctive relief. Pub. Health L. § 12-5.

    Sentinel's position seems to be that had Guy Hepner ignored the Governor's general executive orders which applied to all non-essential businesses and attempted to open the gallery, but then was specifically shut down by the Health Commissioner or court order for violating the executive order, that would have triggered Civil Authority coverage because that would have been a "specific prohibition" by a civil authority.  But an insured should not be obligated to violate the law to obtain insurance coverage, and this Court should reject the proposition that Guy Hepner had to violate the executive order and be "specifically" shut down before it could avail itself of the civil authority coverage it purchased on public policy grounds alone.

    Sentinel argues that even if access to the gallery was prohibited, such prohibition "was not the 'direct result' of direct physical loss to 'property in the immediate area.'" (Mov. Br. at

13

14). But this is not what the Civil Authority coverage provides, and Sentinel's revisions to the Policy language are once again instructive. The Policy states:

> This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".

Compl., ¶ 23 (quoting Policy, Special Property Coverage Form § A.5.q). Thus, the civil authority prohibitions contemplated by this provision need not emanate from a "direct physical loss" to property, but rather to must be a "direct result of a Covered Cause of Loss" to property. This is an important distinction in a Policy that defines "Covered Cause of Loss" not as "direct physical loss" but rather as "*risks* of direct physical loss." Policy, Special Property Coverage Form § A.3) (capitalization omitted, emphasis added). That is, a "Covered Cause of Loss" need not be an actual direct physical loss (which occurred here in all events), but rather need be only the *risk* of such loss. A global pandemic which, to date, has taken the lives of over 200,000 people in the United States and nearly 24,000 in New York City, was the reason Guy Hepner's gallery was ordered shut, and nothing contained in the Sentinel Policy indicates why such virus, which according to authorities was "causing property loss and damage,"[7] should not be considered a risk of direct physical loss.

      Finally, the Second Circuit's decision in *United Air Lines, Inc. v. Insurance Company of the State of Pennsylvania*, 439 F.3d 128 (2d Cir. 2006) does not help Sentinel because the shutdown of Reagan National Airport following the September 11th attacks at issue in that case stemmed from government "fear of future attack," *i.e.*, it was admittedly speculative. Here, COVID-19 was ravaging New York City when Plaintiff's gallery was shut down and best

---

[7] Executive Order 107 of Mayor de Blasio, April 14, 2020 ("WHEREAS, this Order is given because of the propensity of the virus to spread person-to-person and also because the actions taken to prevent such spread have led to property loss and damage;").

14

estimates tell us that nearly 24,000 people died in New York City *subsequent* to the first civil authority orders mandating Plaintiff's closure were issued in March 2020. Thus, the speculative shut down at issue in *United Airlines* has no bearing here.

## CONCLUSION

For the reasons set forth herein, Guy Hepner respectfully requests that Sentinel's motion to dismiss the Complaint pursuant to Rule 12(b)(6) be denied.  Alternatively, to the extent this Court is inclined to grant any portion of Sentinel's motion, Guy Hepner respectfully requests leave to amend the Complaint to address any perceived deficiencies therein.

Dated: New York, New York
September 22, 2020

**THE CASAS LAW FIRM, P.C.**

By: /s/ John V. Golaszewski
John V. Golaszewski, Esq.
1740 Broadway, 15th Floor
New York, New York 10019
T: 855.267.4457
F: 855.220.9626
*Attorneys for Plaintiff*