UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

10012 HOLDINGS, INC. d/b/a GUY HEPNER,

                            Plaintiff,

—*against*—

HARTFORD FIRE INSURANCE COMPANY and
SENTINEL INSURANCE COMPANY, LTD.,

                            Defendants.

20 Civ. 4471 (LGS)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
SENTINEL INSURANCE COMPANY, LTD.'S MOTION TO DISMISS**

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

October 2, 2020

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

DISCUSSION ......................................................................................................................... 1

    I.      Guy Hepner Has Not Alleged Facts to Trigger Business Income
           or Extra Expense Coverage ................................................................................ 1

           A.      Courts Across the Country Have Concluded That
                   COVID-19 Business Interruption is Note a Direct Physical Loss ............. 2

           B.      Guy Hepner Did Not Lose Any Property "At" Its Premises ...................... 3

           C.      The "Covered Cause of Loss" Definition Does
                   Not Rescue Guy Hepner's Claims .............................................................. 5

           D.      Guy Hepner Does Not Identify Any "Covered Property"
                   That Was Lost or Damaged ........................................................................ 7

           E.      Out-of-State Cases Involving Losses from Toxic Mold
                   or Similar Contaminants Are Distinguishable ........................................... 8

    II.     Guy Hepner Has Not Alleged Facts to Trigger Civil Authority Coverage ............. 8

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*10E, LLC v. Travelers Indemnity Co.*,
  No. 2:20-cv-04418, 2020 WL 5095587 (C.D. Cal. Aug. 28, 2020) .............................. 4, 5

*Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's*,
  No: 8:20-cv-1605, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020) .................................. 2

*MDW Enterprises v CNA Insurance Co.*,
  772 N.Y.S.2d 79 (2d Dep't 2004) ............................................................................... 6, 7

*Ment Brothers Iron Works Co., Inc. v. Interstate Fire & Casualty Co.*,
  702 F.3d 118, 122 (2d Cir. 2012) ..................................................................................... 7

*Morgan Stanley Group Inc. v. New England Insurance Co.*,
  225 F.3d 270 (2d Cir. 2000) .............................................................................................. 6

*Mudpie, Inc. v. Travelers Casualty Insurance Co.*,
  20-cv-03213, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) ............................................ 2

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*,
  17 F. Supp. 3d 323 (S.D.N.Y. 2014) ................................................................................. 8

*Oral Surgeons, P.C. v. The Cincinnati Insurance Co.*,
  No. 4-30-CV-222, 2020 WL 5820552 (S.D. Iowa Sept. 29, 2020) .................................. 2

*Pappy's Barber Shops, Inc. v. Farmers Group, Inc.*,
  No. 20-CV-907, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) ....................................... 2

*Plan Check Downtown III, LLC v. AmGuard Insurance Co.*,
  No. 2:20-cv-06954, 2020 WL 5742712 (C.D. Cal. Sept. 10, 2020) .............................. 2, 3

*Plan Check Downtown III, LLC v. AmGuard Insurance Co.*,
  No. 2:20-cv-06954, 2020 WL 5742713 (C.D. Cal. Sept. 16, 2020) .................................. 2

*Rokeach v. Hanover Insurance Co.*,
  No. 1:13-cv-5011-GHW, 2015 WL 2400097 (S.D.N.Y. May 19, 2015) .......................... 4

*Rose's 1 LLC v. Eerie Insurance Exchange*,
  No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Aug. 6, 2020) ........................ 4

*Roundabout Theatre Co. v. Continental Casualty Co.*,
  751 N.Y.S.2d 4 (1st Dep't 2002) ............................................................................... 3, 4, 7

*Sandy Point Dental PC v. The Cincinnati Insurance Co.*,
    20 CV 2150, 2020 WL 5630465 (N.D. Ill. Sept. 21, 2020) ................................................. 2

*Studio 417, Inc. v. Cincinnati Insurance Co.*,
    No. 20-cv-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) .................................... 2

*Turek Enterprises, Inc. v. State Farm Mutual Automobile Insurance Co.*,
    No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020) ......................................... 2

*United Air Lines, Inc. v. Insurance Company of State of Pennsylvania*,
    439 F.3d 128 (2d Cir. 2006) ........................................................................................... 10

### REGULATIONS

Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) ....................................................... 9

**INTRODUCTION**

Sentinel Insurance Company, Ltd. ("Sentinel") moved to dismiss this insurance coverage case because the plaintiff ("Guy Hepner"), an art gallery claiming losses from the COVID-19 pandemic, does not allege the essential facts necessary to trigger coverage—namely, "direct physical loss of or physical damage to property," either at its premises (for Business Income or Extra Expense coverage) or in the immediate area (for Civil Authority coverage). A growing chorus of cases across the country has recognized that losses from the COVID-19 pandemic and associated governmental responses are not covered under this language.

In opposition, Guy Hepner all but ignores the case law, focusing on the argument that Sentinel's position confuses "physical damage" and "physical loss" by treating them as synonymous. But it is Guy Hepner that is confused. There is a physical "loss" of property when it goes missing. That is distinct from physical "damage." The case law is clear (including in the context of COVID-19) that "direct physical loss" does *not* include what Guy Hepner alleges— the "loss of use" of a business location from government orders or other external factors.

At bottom, Guy Hepner has failed to identify any lost or damaged property at its premises (or in the immediate area), and therefore the Court should dismiss this case with prejudice.

**DISCUSSION**

**I.  GUY HEPNER HAS NOT ALLEGED FACTS TO TRIGGER BUSINESS INCOME OR EXTRA EXPENSE COVERAGE**

To trigger Business Income and Extra Expense coverage, Guy Hepner's business interruption must have been caused by "direct physical loss of or direct physical damage to property" at its covered premises. (ECF 1 ("Compl.") ¶¶ 23, 26; ECF 21 at Ex. A ("Policy"), Special Property Coverage Form §§ A.5.o.(1), A.5.p.(1) (SENT00039).) The core flaw in Guy

Hepner's case is that it has not alleged facts falling within this language. As discussed below, nothing in Guy Hepner's opposition can remedy this problem.

### A. Courts Across the Country Have Concluded That <u>COVID-19 Business Interruption is Not a Direct Physical Loss</u>

Sentinel's moving papers cited seven cases (including one from Judge Caproni in this District) that rejected COVID-19 business interruption claims because of a lack of "direct physical loss" to property. (ECF 20 ("Sentinel Br.") 7-9.) There have since been **seven additional** federal decisions coming out the same way, including the following:

- An Illinois federal court concluded that a dental practice had not alleged "direct physical loss" because it was seeking "financial losses as a result of . . . . [governmental] closure orders," not losses from anything that "physically alter[ed] the appearance, shape, color, structure, or other material dimension of the property." *Sandy Point Dental PC v. The Cincinnati Ins. Co*., 20 CV 2150, 2020 WL 5630465, at *3 (N.D. Ill. Sept. 21, 2020).

- A California federal court dismissed a barbershop's claims because "losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase." *Pappy's Barber Shops, Inc. v. Farmers Group, Inc*., No. 20-CV-907, 2020 WL 5500221, at *4 (S.D. Cal. Sept. 11, 2020).[1]

---

[1] *See also Oral Surgeons, P.C. v. The Cincinnati Ins. Co.*, No. 4-30-CV-222, 2020 WL 5820552 (S.D. Iowa Sept. 29, 2020); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's*, No: 8:20-cv-1605, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020); *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, 20-cv-03213, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020); *Plan Check Downtown III, LLC v. AmGuard Ins. Co*., No. 2:20-cv-06954, 2020 WL 5742712 (C.D. Cal. Sept. 10, 2020) (tentative ruling), 2020 WL 5742713 (C.D. Cal. Sept. 16, 2020) (dismissal); *Turek Enters., Inc. v. State Farm Mut. Automobile Ins. Co*., No. 20-11655, 2020 WL 5258484 (E.D. Mich. Sept. 3, 2020). The one court ruling the other way, *Studio 417, Inc. v. Cincinnati Ins. Co*., No. 20-cv-03127, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), should not be followed because (1) it is an outlier, (2) concluded that "direct physical loss" of property encompasses "restricted access," *id*. at *6 n.6, which is contrary to New York law, and (3) relied on the alleged "the presence of COVID-19 on premises," *id*. at *6, which is not alleged here.

Guy Hepner does not cite or discuss the specific facts or reasoning of any one of these cases. Instead, as detailed below, Guy Hepner advances various theories that supposedly make this case unique and justify a different outcome. These arguments are meritless.

### B. Guy Hepner Did Not Lose Any Property "At" Its Premises

Guy Hepner is wrong to argue that there is an "ambiguity concerning the meaning of 'loss'" that would allow the phrase "direct physical loss of . . . property at the 'scheduled premises'" to encompass the loss of *use* of the entire premises. (ECF 23 ("Opp.") 6; Policy, Special Property Coverage Form § A.5.o.(1) (SENT00039).) The First Department's binding decision in *Roundabout* rejected this *exact* argument, finding that the phrase "direct physical loss or damage to the [insured's] property" does *not* encompass "loss of use" of the property. *Roundabout Theatre Co. v. Contin. Cas. Co.*, 751 N.Y.S.2d 4, 6 (1st Dep't 2002).

*Roundabout*'s holding is consistent with ordinary English usage. The phrase "direct physical loss of . . . property at the 'scheduled premises'" describes a *physical* event where specific items of property *within* (or "*at*") the premises are lost. (Policy, Special Property Coverage Form § A.5.o.(1) (SENT00039).) In this case, if Guy Hepner had to suspend operations because, for example, artwork at its gallery was stolen, there might be a "direct physical loss of . . . property at" the premises.

But it would mangle the English language to say that a governmental order allegedly restricting the gallery's operations is a "direct *physical* loss of . . . property *at*" the premises. In denying a similar COVID-19 claim, a California federal court explained that an interpretation of the phrase "direct physical loss" as encompassing "anything that interferes with the permitted physical activities on a property" would not "be a reasonable one because it would be a sweeping expansion of insurance coverage." *Plan Check*, 2020 WL 5742712, at *6.

This straightforward reasoning does not, as Guy Hepner argues, treat the words "loss" and "damage" as "synonymous." (Opp. 6.) As *Roundabout* held, physical "loss" has independent meaning, insofar as it would encompass "the theft or misplacement of . . . property that is neither damaged nor destroyed." 751 N.Y.S.2d at 7. For example, in *Rokeach v. Hanover Insurance Co.*, No. 1:13-cv-5011-GHW, 2015 WL 2400097, at *3 (S.D.N.Y. May 19, 2015), the policy covered "direct physical loss of or damage to Covered Property at the premises," and the court allowed a welding business to proceed past summary judgment on a claim arising from a series of property thefts. *Id*. at *4. *See also*, *e.g.*, *MGN Logistics, Inc. v. Travelers Property Cas. Co.*, No. 16 CV 4301, 2017 WL 3780280, at *4 (N.D. Ill. Aug. 31, 2017) (allowing coverage under a policy insuring against "direct physical loss" when copper coils went missing in transit).

Guy Hepner is also incorrect to argue that "none" of the swelling number of cases from across the country rejecting COVID-19 business interruption claims "analyzed a policy which provided coverage for both 'loss' and 'damage.'" (Opp. 8.)

In *Rose's 1 LLC v. Eerie Insurance Exchange*, No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Aug. 6, 2020) (cited Sentinel Br. 7-8), for example, the policy covered losses "resulting directly from 'loss' or 'damage' to the property insured," and the plaintiffs argued that the court "must treat the term 'loss' as distinct from 'damage.'" *Id*. at *1, 3. But the court in *Rose's 1* explained that the adjectives "direct" and "physical" still require "a direct physical intrusion on to the insured property." *Id*. at *3. Accordingly, a governmental order that merely restricted the *operation* of restaurants did not suffice. *Id*.

In addition, in *10E, LLC v. Travelers Indemnity Co.*, No. 2:20-cv-04418, 2020 WL 5095587 (C.D. Cal. Aug. 28, 2020) (cited Sentinel Br. 9), the court explained that even "giving separate effect to 'loss' and 'damage,'" a restaurant had not suffered a "loss" of property because

it did "not allege that it was permanently dispossessed of any insured property" (*i.e.*, that it *lost* any property). *Id*. at *5. *See also Mudpie*, 2020 WL 5525171, at *4 (same).

The reasoning of these cases is correct. Guy Hepner alleges that Governor Cuomo's "stay at home" orders "forced [it] to suspend business operations at the gallery," thereby causing its losses. (Compl. ¶ 9.) There is no allegation that Guy Hepner lost (or, was permanently disposed of) property, nor any allegation of any *physical* intrusion that caused its losses. Therefore, Guy Hepner has not alleged, as it must for Business Income or Extra Expense coverage, losses arising from "direct physical loss of . . . property at" its premises.

### C. The "Covered Cause of Loss" Definition Does Not Rescue Guy Hepner's Claims

The Policy defines "Covered Cause of Loss" to mean "risks of direct physical loss," except where excluded or limited (Compl. ¶ 28; Policy, Special Property Coverage Form § A.3 (SENT00031) (capitalization removed)), and Guy Hepner seizes upon the word "risk" to suggest that it need not show an *actual* direct physical loss. (Opp. 6-7.) This is incorrect. The plain language of Business Income clause states that, to trigger coverage, the losses "**must be caused**" by direct physical loss or damage to property (not merely the risk of loss or damage):

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension ***must be caused by direct physical loss of or physical damage to property at the "scheduled premises"***, including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

(Comp. ¶ 23; Policy, Special Property Coverage Form § A.5.o.(1) (SENT00039) (emphasis added).) Along the same lines, the plain language of the Extra Expense clause covers only the extra expenses that Guy Hepner "**would not have incurred**" without (*i.e.*, that were *caused by*) a direct physical loss or damage to property at the premises:

> We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" ***that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises"***, including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

(Compl. ¶ 26; Policy, Special Property Coverage Form § A.5.p.(1) (SENT00039) (emphasis added).) The phrase "Covered Cause of Loss" at the end of the clauses establishes that Sentinel issued an "all risks" policy that insures against risks of direct physical loss, unless excluded or limited. That requirement does not erase the language that precedes it, requiring an *actual* direct physical loss to property at the scheduled premises (not the mere risk of one).

Regardless, even on Guy Hepner's attempted re-writing of the Policy, Guy Hepner has not shown how its claimed losses arise from a Covered Cause of Loss. Guy Hepner asserts that that a "global pandemic . . . is exactly such [a] 'risk of direct physical loss,'" (Opp. 7) but does not explain how that could be so. While a global pandemic will surely create risks of *economic* loss to an art gallery, what are the risks of "direct physical" losses to property? Guy Hepner does not say. And such purely economic losses are not covered under Guy Hepner's policy because direct physical loss or damage to property is required.

Finally, Guy Hepner wrongly argues that the language above must be given a "strict and narrow construction" and cannot be read in Sentinel's favor unless the language is "clear and unmistakable." (Opp. 7.) But Guy Hepner's support for this point is *MDW Enterprises v CNA Insurance Co.*, 772 N.Y.S.2d 79 (2d Dep't 2004), which discusses the standards for interpreting "exclusions or exceptions from policy coverage." *Id*. at 82. The language in dispute here does not concern an exclusion, but instead concerns the scope of what is covered in the first place—an issue for which Guy Hepner bears the burden of pleading and proof. *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000).

In assessing whether Guy Hepner has met that burden, courts read insurance policies in accordance with "common speech" and with "the reasonable expectation and purpose of the ordinary businessman." *MDW*, 772 N.Y.S.2d at 82. Put simply, "[t]erms in an insurance contract must be given 'their plain and ordinary meaning.'" *Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 122 (2d Cir. 2012). Here, the language at issue—"direct physical loss of . . . property at" Guy Hepner's premises—cannot be stretched to cover losses allegedly resulting from an external, governmental order associated with the COVID-19 pandemic.

### D. Guy Hepner Does Not Identify Any "Covered Property" That Was Lost or Damaged

Guy Hepner argues that "Covered Property" in the policy "includes much more" than the "buildings, structures, fixtures, and the like" (Opp. 7-8), but this argument is unhelpful to Guy Hepner because its Complaint does not identify *any* Covered Property that was lost or damaged.

For example, while the definition of Covered Property includes "[p]roperty you own that is used in your business" or "[p]roperty of others that is in your care, custody or control" (Policy, Special Property Coverage Form § A.1.b.(1), (3) (SENT00030)), the Complaint does *not* allege that any property meeting these descriptions (*e.g.*, artwork) was lost or damaged. Therefore, Guy Hepner has still failed to allege facts to trigger coverage under the Policy.

According to Guy Hepner, this allegedly broad definition of Covered Property distinguishes this case from *Roundabout* (Opp. 11), but the policy in *Roundabout* similarly covered damage and loss to any Broadway theater, as well as to the "equipment" of the theater. 751 N.Y.S.2d at 5. Guy Hepner is simply incorrect to assert that the coverage reached only "the theater building itself." (Opp. 11.) Regardless, the holding of *Roundabout*—that the phrase "direct physical loss or damage to the [insured's] property" does *not* encompass the "loss of use"

of property, 751 N.Y.S.2d at 5—has nothing to do with the distinction Guy Hepner is trying to make here. *Roundabout* is exactly on point and mandates dismissal here.

### E. Out-of-State Cases Involving Losses from Toxic Mold or Similar Contaminants Are Distinguishable

Out-of-state cases involving damage from causes not visible to the naked eye, such as toxic mold, asbestos, and the like (*see* Opp. 9-10) do not help Guy Hepner. Guy Hepner raised this point in its pre-motion letter, and Sentinel detailed in its moving papers why these non-binding cases are easily distinguishable. (Sentinel. Br. 12-13.) In short, as Judge Engelmayer explained: "Whether or not these cases were each correctly decided, each involved . . . a physical change for the worse in the premise" that caused the plaintiff's losses. *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014). In opposition, Guy Hepner offers no response, nor does it point to any "physical change for the worse" at its gallery. Instead, it blames its losses on Governor Cuomo's "stay at home" orders (Compl. ¶ 9), which required *all* non-essential businesses to reduce their workforces, irrespective of any particular property damage at any particular location. Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020). That is why, just as in *Newman Myers*, there is no coverage.

## II. GUY HEPNER HAS NOT ALLEGED FACTS TO TRIGGER CIVIL AUTHORITY COVERAGE

Sentinel's moving papers explained that Guy Hepner had not alleged facts to trigger Civil Authority Coverage because Guy Hepner had not alleged that "access" to its premises was "specifically prohibited," or that any access restrictions were the "direct result" of a risk of direct physical loss to "property in the immediate area." (Sentinel Br. 13-15.) Guy Hepner makes three arguments in opposition, all of which are meritless.

First, Guy Hepner argues that Governor Cuomo's orders effectively "prohibited . . . operation of its gallery" (Opp. 13.) But, as one court explained in the context of a similar

COVID-19 business interruption case, even if "government orders alleged in the complaint prohibit the operation of Plaintiff's business" that is not the same as "prohibit[ing] *access* to Plaintiffs' place of business." *Pappy's Barber Shops*, 2020 WL 5500221, at *6 (emphasis added) (denying civil authority coverage); *see also Sandy Point*, 2020 WL 5630465, at *3 (same). Here, nothing in the controlling order from Governor Cuomo bars *access* to the premises. Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020).

Second, Guy Hepner emphasizes that, under the definition of Covered Cause of Loss, Civil Authority coverage can be triggered by the "risk" of direct physical loss or damage to property (as opposed to *actual* loss or damage) in the "immediate area" of Guy Hepner's premises. (Opp. 13-.14.) According to Guy Hepner, a "global pandemic" *is* this sort of risk. (*Id.* at 14.) This, too, is incorrect. There is no possible reading of Governor Cuomo's orders that indicates any concern for property in the "immediate area" of Guy Hepner. The orders had nothing to do with localized property damage (or even the *risk* of that), and everything to do with keeping people apart from one another, to reduce "community contact transmission of COVID-19." Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020). No damaged property is identified, and the public was not directed to avoid or steer clear of any damaged property.

Guy Hepner for the first time refers to an Executive Order from Mayer de Blasio that states in a recital: "this Order is given because of the propensity of the virus to spread person-to-person and also because the actions taken to prevent such spread have *led to property loss and damage*." Emergency Executive Order No. 107 (April 14, 2020) (cited Opp. 14) (emphasis added)[2] At the outset, that Order is irrelevant because it was not the cause of Guy Hepner's losses. The Order concerns various City governance matters (*e.g.*, election disclosures), but the

---

[2] https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-107.pdf

Complaint alleges only losses caused by "[c]ivil authority orders issued by the *Governor of the State of New York* in response to the outbreak of COVID-19." (Compl. ¶ 9 (emphasis added).)

Regardless, the City's Order makes no reference to specific property at or near Guy Hepner's premises, and cannot change the reality of whether any such property was damaged. In fact, the City has admitted that the "property loss" recital above was inserted after lobbying from "people who had concerns about insurance"—surely a euphemistic reference to the plaintiffs' bar. *See* Leslie Scism, *Companies Hit by Covid-19 Want Insurance Payouts. Insurers Say No.*, The Wall Street Journal (June 30, 2020). The powers of the New York City Mayor may be broad, but they do not include the power to issue factual findings in a private contract dispute.

Third, Guy Hepner tries to distinguish *United Air Lines, Inc. v. Insurance Company of State of Pennsylvania*, 439 F.3d 128 (2d Cir. 2006), on the ground that the civil authority order there (shutting down Reagan National Airport after the September 11, 2001 terrorist attacks) was based on a "speculative" concern for future attacks, whereas the orders here are based on real, ongoing harm. (Opp. 14-15.) But the holding on *United* was not about whether the closure order was based on real or speculative harms. It was that the closure order "had nothing to do with repairing, mitigating, or responding to the damage caused by the attack on the Pentagon"—that is, the order was unconnected to the ***property*** loss or damage that the insured was citing as the cause of its loss. 439 F.3d at 135. Here too, there is no property loss or damage at all, much less property loss or damage that accounts for Guy Hepner's losses. As with *United*, the governmental order here is about controlling where people congregate and not the result of any particular property loss or damage. Accordingly, there is no coverage.

**CONCLUSION**

For the foregoing reasons and others appearing on the record, the Court should dismiss Guy Hepner's Complaint in its entirety with prejudice.

- 10 -

Dated: October 2, 2020

Respectfully submitted,

STEPTOE & JOHNSON LLP

By:   */s/ Sarah D. Gordon*

| | |
|---|---|
| Charles Michael | Sarah D. Gordon* |
| Meghan Newcomer | 1330 Connecticut Avenue, NW |
| 1114 Avenue of the Americas | Washington, D.C. 20036 |
| New York, New York 10036 | (202) 429-3000 |
| (212) 506-3900 | sgordon@steptoe.com |
| cmichael@steptoe.com | *admitted *pro hac vice* |
| mnewcomer@steptoe.com | |

*Counsel for Sentinel Insurance Company, Ltd.*